JESSE M. SALTER v. THE STATE.

*No. 1443.   Decided December 2nd, 1896.*

1. **Swindling—Exchange of Land for Horses—Evidence—Deed to Third Party.**

Where an indictment for swindling alleged that the swindle consisted in the exchange by defendant of one hundred acres of land to one R., for thirty-four head of horses.   Held: That a deed executed by defendant to one C., for said land, was admissible in evidence, in connection with parol proof, that the trade and exchange was really made with R., but that the deed was executed by defendant to C., at R.'s suggestion, as security for a loan from C. to R.   A bill of sale to the defendant for the horses in question, was also admissible as evidence in connection with like proof, although it was signed and executed by both C. and R., it being shown that the horses, at the time of the exchange, were under a mortgage lien from R. to C., for money loaned by C. to R.

2. **Same.**

Where an indictment for swindling, by exchange of land for horses, among other matters, alleged: that forty-five acres of the land in cultivation was rented at $3 per acre, but this allegation was not negatived or traversed; testimony as to the rent of said land was not admissible.

3. **Same—Evidence Insufficient.**

See facts, stated in the opinion, which are Held: To be insufficient to sustain a judgment of conviction for swindling, because too indefinite and uncertain as to the value of the property and the amount necessary to constitute the swindle, under the allegations of the indictment.

4. **Same—Written Instrument—Indictment.**

Where part of the fraudulent pretenses in the swindle consisted in the executing of a deed by the accused to one C.—the deed should have been set out in the indictment.

APPEAL from the District Court of Reeves.   Tried below before Hon. C. N. BUCKLER.

Appeal from a conviction for swindling; penalty, two years' imprisonment in the penitentiary.

The case is sufficiently stated in the opinion.

*Gage & Walthall,* and *T. J. Hefner,* for appellant, filed an able and interesting brief.

*Mann Trice,* Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of swindling, and given two years in the penitentiary, and prosecutes this appeal.   The swindle is alleged to consist in the exchange of one hundred acres of land in Panola County, for and in consideration of thirty-four mares, of the value of $10 each.   The indictment alleges that appellant, at the time of the alleged exchange, represented to one Riggs, the prosecutor, "that all of said one hundred acres of land was fine creek bottom land, lying and being situate on McFadden creek; that forty-five acres of said land was improved, and under fence and in cultivation; and that he, the said Jesse M. Salter, had a perfect, clear, and sufficient title to said land, and had

the right to. dispose of the same; and that he thereby acquired from said Riggs certain thirty-four mares, of the value of ten dollars each, amounting in all to the sum of three hundred and forty dollars; that said representations were fraudulent and false, and that said Salter did not own, and did not have a clear, perfect and sufficient title to, said land, and did not have the right to dispose of the same; and that he did not own one hundred acres of fine creek bottom land, lying and being on McFadden creek in said Panola County, Texas, forty-five acres of which were and are under fence and cultivation; and that he (the said Salter) then and there. knew that the said representations so made by him were false," etc. On the trial two deeds were introduced in evidence. One was a deed from Jesse M. Salter to Shep Casey, the same describing the land conveyed, as follows: "One hundred acres out of the northeast corner of the Andrew McFadden survey, formerly occupied by E. B. Morris, and adjoining the property of Billy Nutt on the southeast, also adjoining the land of one Mims; said land being partially improved by the fencing of forty-five acres; said forty-five acres being under cultivation; said one hundred acres being all creek bottom land on McFadden creek." The consideration expressed in the deed was said thirty-four head of mares, and the date of the deed was the 26th of October, 1894. Also, deed from E. B. Morris and wife to Jesse M. Salter, for the same tract, de-- scribed as follows: "One hundred acres, more or less, out of the Andrew McFadden survey. For better description, see deed heretofore made by Jas. and A. M. Morris, now on record in the office of the County Clerk of Panola County, Texas; said deed having been made about the year 1876." The consideration expressed in said deed is $1000, and it is dated the 31st day of October, 1893. Appellant objected to the introduction of the first-named deed, on the ground that the same did not. disclose any transaction had between the defendant and Brannick Riggs, but that the same disclosed a transaction and conveyance of one hundred acres of land by the defendant to said Casey. The court overruled the objection, and defendant reserved his bill of exceptions. In connection with this deed, the testimony showed that the real transaction was between Riggs and appellant, the trade being made between them. The transfer, on Riggs' suggestion, was made to Casey, and was a security for a loan from Casey to said Riggs. It is allowable to show that a deed, absolute on its face, is but a mortgage or security for the debt, and in this case, Casey was a mere trustee for the benefit of Riggs; the real transaction being between Riggs and appellant. The bill of sale of the mares, which was introduced in evidence, also shows a bill of sale of said mares executed by Casey and Riggs to defendant. This, was also objected to, because the indictment alleged an acquisition by Riggs of the mares in question, and not by Casey. The evidence in this connection shows that the mares were, at the time of the negotiation between Riggs and appellant, under mortgage, either by a bill of sale absolute on its face or by a formal mortgage executed by Riggs to Casey. The property in the mares was in Riggs, and Casey only had a lien upon

them for money loaned. In our opinion it was permissible to show this, and the bill of sale was admissible in evidence as thus explained; the real trade being between Riggs and appellant. And, notwithstanding the indictment charged the transaction as between Riggs and appellant, yet, in our opinion, both the deed and the bill of sale, in connection with the parol proof, were admissible in evidence, and together showed that the transaction was between Riggs and appellant, and that, if any one was swindled, it was Riggs, and not Casey; or, if Casey was ultimately swindled, still the real transaction as to the parties was between appellant and Riggs. While the indictment in this case charged that defendant represented that the forty-five acres in cultivation was rented at $3 per acre, yet this allegation was not negatived or traversed, and there was no swindle predicated upon such alleged pretense, and we believe that said testimony as to the rent of said land was not admissible. Appellant assigns as error that the verdict of the jury is contrary to the law, and is not supported by the evidence. Recurring to the alleged false pretenses upon which the swindle is claimed to have been perpetrated, it will be noted that there are three grounds of swindling: (1) That appellant represented he had 100 acres of land in Panola County, to which he had a clear and perfect title. (2) That said land was on McFadden's Creek, and was bottom land. (3) That forty-five acres of said land was in cultivation—and each of these pretenses is alleged to have been false, within the knowledge of the appellant, when he made it. Now, if the proof sustains any one of these allegations, and further shows that, by means of such fraudulent representation or representations, appellant acquired the property of the prosecutor of the value of $50 or over, then he was guilty of a felony. If the proof showed that the warranty failed as to the whole of said 100 acres of land, and in fact appellant had no land in Panola County, then the value of all of the mares, which is shown to have been $340, would measure the amount out of which Riggs was swindled; or, if it was shown that appellant had a good title to all of said 100 acres of land, but that it was not bottom land, and that this value, in consequence thereof, was $50 or over less than if it had been bottom land, then the conviction could be sustained on the ground of false representation; or, if it had been shown that appellant represented that he had forty-five acres in cultivation, when in fact he did not have any in cultivation, and that the value of the said tract was depreciated $50 or more, in that event defendant could have been convicted of a felony. We have searched the record carefully, and fail to find any evidence showing that there has been a breach of the warranty as to the quantity of the land sold. We take it that the same amount of proof would be required in this character of case as would be required in a civil case, and the most that can be said of the evidence in this record is that one Mims claimed twenty acres of the land in question. No superior title is shown to it whatever on the part of Mims; and, even if there was a breach of the warranty shown as to the twenty acres, yet there is no proof of its value.

In a civil suit on the warranty the warrantee could only recover, as damages, the reasonable value of the land he may have lost by a superior title as to the twenty acres.   If, in the suit on this warranty, Riggs had lost twenty acres, and if it was shown to be worth $1 per acre, he would recover only $20 damages.   The reasonable value of the land lost would cover his damages, and he would be entitled to no more.   The record furnishes us with no estimate of the value of this twenty acres, and so, conceding that Mims has a superior title to the twenty acres, we cannot assume its value; much less can we assume that it was worth $50, so as to send the appellant to the penitentiary.   We are not permitted to indulge such presumptions against a defendant.   Moreover, the evidence fails to furnish us with any criterion to determine whether said 100 acres of land alleged to be creek bottom land (and some of which was testified by the witnesses as·being hill land) was any the less valuable on that account.   Some bottom land, and especially creek bottom land, is less valuable than adjoining hill land, as being more subject to overflow; but we cannot speculate as to a matter of this character.   It was incumbent on the State to show by proof the difference in value, so that the jury might pass upon this question, in order to ascertain how much in value the appellant had swindled Riggs out of.   If the difference in value was only a few dollars, Riggs was not swindled out of all the mares, but only of a few of them, equal in amount to the loss in the value of the land.   And so the record does not afford us any proof—or, at most, but meager proof—as to the amount of land in cultivation, and we are absolutely furnished with no evidence as to the difference in value of such land in cultivation and out of cultivation, and, as stated before, we cannot guess as to the value.   All of these matters were provable, and the burden was on the State to show, by facts, that in the transaction, upon some one or all of the grounds alleged, appellant was swindled—that is, defrauded—out of $50 or more, before the jury were authorized to find him guilty of a felony, and send him to the penitentiary.   See, Gaskins v. State (Austin term, 1895), 38 S. W. Rep., 470. We would further observe that, as a part of the fraudulent pretenses was the execution of the deed from appellant to Casey; this should have been set out.   See, Hardin v. State, 25 Tex. Crim. App., 74.   Appellant assigns as error the informality of the verdict of the jury.   We think the verdict is sufficient.   For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and Remanded.*

Hurt, Presiding Judge, absent.