**Opinion issued August 29, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00581-CR

———————————

**TRAVERS CRUMPTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1802665**

---

## MEMORANDUM OPINION

Travers Crumpton was convicted by a jury of evading arrest in a motor

vehicle[1] and sentenced to 28 years' imprisonment. He raises two issues on appeal.

First, Crumpton argues that the trial court failed to properly instruct the jury on his

---

[1] *See* TEX. PENAL CODE § 38.04.

necessity defense. Second, he challenges the sufficiency of the evidence to defeat his necessity defense.

We affirm.

## Background

On March 15, 2022, Kay Foster, Crumpton's mother, called the police around 10:00 a.m. and reported that Crumpton, her adult son who was living with her at the time, had threatened and verbally abused her, and was in possession of a gun. She met police officers from the Houston Police Department ("HPD"), including Sergeant G. Selle, outside of her residence and informed them that Crumpton had a warrant for his arrest, was armed, had a "tendency to flee," and "wants to shoot officers if [they] try to apprehend him." Sergeant Selle confirmed that Crumpton had an open warrant for violating parole, as well as a lengthy criminal history including multiple convictions for evading arrest.

As a result of this information, Sergeant Selle and his partner called for backup. Once additional officers arrived, they attempted to secure a perimeter around the area before trying to detain Crumpton. Officers determined that Crumpton was driving a white Audi that was in the parking lot of the apartment complex where Crumpton and his mother resided. Sergeant Selle attempted to block this car with his patrol car, but was not able to do so completely because doing so

2

would have made his patrol car visible from Crumpton's glass patio door and placed him "right in the line of fire."

Once they secured the perimeter, the police officers attempted to contact Crumpton by repeatedly calling his cell phone. When Crumpton did not answer, Sergeant T. Zhang began calling Crumpton from his patrol car's loudspeaker, directing him to come out and talk to police so that they could "settle everything in a civil manner."

Crumpton exited the residence through the back patio door but went back inside. For several minutes, the police officers continued trying to communicate with Crumpton and requested that he "step out with your hands up." Crumpton eventually reemerged from the residence but told the officers that he had nothing to talk to them about and he was leaving. Crumpton ignored police commands to stop and put his hands up. Instead, he got into his car and drove around the police vehicles and left the parking lot at a high rate of speed. Crumpton was eventually arrested six months later.

Crumpton, proceeding pro se at trial, requested and was given a jury instruction on the defense of necessity. Crumpton testified that he fled the scene in his car because he was terrified that the police officers were going to shoot him, and that the harm he caused by fleeing was less than the harm of being shot by the police.

The jury found him guilty of evading arrest in a motor vehicle—implicitly rejecting his necessity defense.[2]  This appeal followed.

## Jury Charge Error

In his first issue, Crumpton argues that the trial court failed to properly instruct the jury as to his necessity defense.  The State responds that Crumpton's arguments fail because the trial court properly instructed the jury on the necessity defense.  We agree with the State.

### A.    Standard of Review

In analyzing a potential jury charge error, we use a two-step review to decide whether reversal is required. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005); *Vernon v. State*, 571 S.W.3d 814, 826 (Tex. App.—Houston [1st Dist.] 2018, pet ref'd).  We first decide whether an error exists. *Ngo*, 175 S.W.3d at 743.  If we determine an error exists, we next analyze the error for harm. *Id.*  The level of harm requiring reversal based on jury charge error depends on whether the appellant properly objected to the error. *Id.*  If, as here, the appellant properly objected to the charge, jury charge error requires reversal when we find "some harm" to his rights. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).[3]

---

[2]     *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

[3]     *Almanza* applies because Crumpton argues that although the trial court charged the jury on his defensive issue of necessity, it failed to do so correctly. *See Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) ("[I]f the trial judge does charge on a

4

We review a trial court's decision not to submit an instruction in the jury charge for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). A trial court does not abuse its discretion when its decision is within the zone of reasonable disagreement. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). Specifically, a trial court does not abuse its discretion in refusing to submit a requested charge or instruction that is not in accordance with the law or constitutes an incorrect statement of the law. *Notias v. State*, 491 S.W.3d 371, 375 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

## B.    Applicable Law

Necessity is a justification defense. TEX. PENAL CODE §§ 9.02, 9.22. Section 9.22 of the Penal Code provides that conduct that otherwise would be criminal is justified if:

(1)    the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2)    the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3)    a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

---

defensive issue . . . but fails to do so correctly, this is charge error subject to review under *Almanza*.").

*Id.* § 9.22. The first two elements are for the jury to decide. *Rodriguez v. State*, 524 S.W.3d 389, 393 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). The third is a question of law for the court. *Id.*

**C.    Analysis**

Crumpton points to three purported errors in the jury charge. First, Crumpton contends that the trial court improperly rejected his proposed definition of "reasonable belief." Second, Crumpton argues that the trial court erred in removing a critical balancing test from the definition of "ordinary standard of reasonableness." And third, Crumpton asserts that the trial court improperly rejected his proposed instruction informing the jurors of the State's burden to disprove the necessity defense beyond a reasonable doubt.

**1.    *Reasonable Belief***

Crumpton requested that the jury be instructed as follows with respect to reasonable belief: "A reasonable belief means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant faced. A belief that should be viewed from the defendant's stand[ ]point at the time he acted."

The trial court did not submit Crumpton's full proposed definition, instead including the following definition in the charge: "'Reasonable belief' means a belief that an ordinary and prudent person would have held in the same circumstances as the defendant."

6

Crumpton claims that the trial court erred in giving this instruction because it does not exactly track the definition of reasonable belief in the Penal Code. Section 1.07(a)(42) defines reasonable belief as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX. PEN. CODE § 1.07(a)(42). Viewing the statutory definition and the definition in the trial court's charge, we conclude that there is no substantive difference between the two.[4] As Crumpton acknowledges, a jury charge that tracks the language of a statute is a "proper charge on the statutory issue." *See Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994).

Yet Crumpton argues that by removing the word "faced" from his proposed definition of reasonable belief, the trial court failed to properly instruct the jury on the subjective component of the necessity defense, and "introduced ambiguity, undermined the subjective nature of the assessment, and resulted in a less fair evaluation of [Crumpton's] beliefs in this case." We disagree.

We discern no meaningful difference between the language of the trial court's definition of reasonable belief, which again tracks the statutory definition in the Penal Code, and the one proposed by Crumpton. The inclusion of the additional

---

[4]     The only discernable differences are the order of words, i.e., "a belief that an ordinary and prudent person would have held" as stated in the charge versus "a belief that would be held by an ordinary and prudent man" as stated in the statute, and the reference to "defendant" in the charge versus "actor" in the statute.

word "faced" at the end of the definition sentence would be unnecessary and repetitive, as the definition in the charge already directed the jury that a reasonable belief refers to a belief held by an ordinary and prudent person "in the same circumstances as the defendant."

Because the jury was already instructed on the appropriate statutory definition of reasonable belief, which was substantially similar to Crumpton's requested instruction, Crumpton's additional wording "was simply unnecessary to clarify the applicable law." *Beltran De La Torre v. State*, 583 S.W.3d 613, 619 (Tex. Crim. App. 2019); *see also DeRusse v. State*, 579 S.W.2d 224, 234 (Tex. Crim. App. 1979) (holding that trial court did not err in refusing appellant's requested charge that was substantially similar to charge ultimately given by trial court). We therefore conclude that Crumpton has failed to demonstrate that the omission of his proposed instruction on the "reasonable belief" was erroneous.

### 2. *Ordinary Standards of Reasonableness*

Crumpton next argues that the trial court erred in submitting its instruction relating to the ordinary standards of reasonableness. Crumpton requested that the trial court include the following definition of ordinary standards of reasonableness in the charge:

> The term 'according to ordinary standards of reasonableness' within the meaning and concept of necessity, is a standard that an ordinary and prudent person would apply to the circumstances that the defendant faced. *A standard of reasonableness that balances the harm the*

8

*defendant sought to avoid against the actual harm caused by the conduct which constituted the proscribed offense*.

The trial court did not include Crumpton's proposed definition. Instead, it defined "ordinary standards of reasonableness" in the charge as "those standards which would be applied by an ordinary and prudent person in the same circumstances as the defendant." According to Crumpton, by not including the second sentence of his proposed instruction in the charge, the trial court removed a critical balancing test from his proposed definition of "ordinary standard of reasonableness." He contends that "[f]ailing to instruct jurors on the need to appropriately weigh the[] harms undermined Crumpton's ability to present a full and effective defense."

But Crumpton does not provide any support for inclusion of this particular instruction, nor is it an accurate reflection of the appropriate balancing test required by the necessity defense. Under the second element of the necessity defense, conduct is justified if "the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct." *See* TEX. PENAL CODE § 9.22(2). Nothing in the statute requires consideration of the "actual harm" caused by the proscribed offense, as stated in Crumpton's proposed charge. *See Notias*, 491 S.W.3d at 375 (holding that trial court does not abuse its discretion by refusing to

submit requested instruction that is not in accordance with law or is incorrect statement of law).

Crumpton's argument also fails to recognize that the jury *was* instructed on the appropriate balancing test in other portions of the charge. The jury was instructed that:

> Conduct is justified if the defendant reasonably believes the conduct is immediately necessary to avoid imminent harm, and the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standard[s] of reasonableness, the harm sought to be prevented by the law proscribing the conduct.

This instruction exactly mirrors the second statutory element of the necessity defense. *See* TEX. PENAL CODE § 9.22(2). The jury was also instructed in the application paragraph to consider this balancing test:

> Therefore, even if you believe from the evidence beyond a reasonable doubt that the defendant did intentionally and knowingly flee in a motor vehicle from Gustav Selle, a person whom the defendant knew was a police officer employed by the Houston Police Department and a person whom the defendant knew was attempting to arrest or detain him, as alleged, but you further believe, or you have a reasonable doubt thereof, that, at the time of such conduct, the defendant reasonably believed such conduct was immediately necessary to avoid imminent harm, to-wit: avoiding serious bodily injury or death by being shot by a police officer, and that the desirability and urgency of avoiding that harm of being shot clearly outweighed, according to the ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing such conduct, you will find the defendant "not guilty."

These instructions served to inform the jury of the proper balancing test to utilize when considering Crumpton's necessity defense. When a refused charge is

10

adequately covered by the charge given, no harm is shown. *Druery v. State*, 225 S.W.3d 491, 505 (Tex. Crim. App. 2007) (citing *Davis v. State*, 651 S.W.2d 787, 792 (Tex. Crim. App. 1983)). We therefore conclude that Crumpton has failed to demonstrate that the omission of his proposed instruction on the "ordinary standards of reasonableness" was erroneous or that the omission, even if erroneous, resulted in some harm.

### 3.    *Burden of Proof*

Finally, Crumpton argues that the trial court erred by refusing his proposed instruction relating to the burden of proof on his necessity defense. Crumpton requested that the following instruction be given to the jury: "You are further instructed that under the presented defense of necessity it is the state that must not only prove beyond a reasonable doubt the essential elements of the cha[r]ged offense, but also that Mr. Crumpton did not act out of necessity." Crumpton argues that by not giving his proposed instruction, the court's charge erroneously omitted any direction to the jury that it was the State's burden to disprove the necessity defense beyond a reasonable doubt.

We disagree.

Although the trial court did not include the instruction above, it did include substantially similar language, *at Crumpton's request*. During the charge

conference, Crumpton requested that additional language related to the necessity

defense be added to the burden of proof instruction in the charge:

MR. CRUMPTON: "Prosecution has the burden of proving the Defendant guilty, and it must do so by proving each and every element of the offense charged." But it also doesn't show a necessity in there. I got it where I'm going to write this: "The Prosecutor in the case not only has the burden of proving the Defendant guilty beyond a reasonable doubt of each and every element of the offense charged but also that Mr. Crumpton did not act out of necessity."

THE COURT: Fine, I'm adding that in.

MR. CRUMPTON: All right. Cool, thank you.

. . . .

THE COURT: Okay. So, what I am willing to do is on page 5 of 10 where in that paragraph there, "The prosecution has the burden of proving the Defendant guilty and it must do so by proving each and ever[y] element of the offense charged beyond a reasonable doubt." I am going to add in language about necessity there.

Thus, the jury was ultimately instructed that:

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt, and also that Mr[.] Crumpton did not act out of necessity, and if it fails to do so, you must acquit the defendant.

Because Crumpton received the instruction he requested, we conclude that he

has not shown any error in the trial court's charge with respect to this point. *See*

12

*Cadd v. State*, 587 S.W.2d 736, 741 (Tex. Crim. App. 1979) ("[I]f a defendant requests a charge and that charge is given just as requested, he is in no position to complain of any error therein.").

For all the reasons above, we hold that the trial court did not abuse its discretion in refusing Crumpton's requested instructions. We thus overrule Crumpton's first issue.

## Sufficiency of the Evidence

In his second issue, Crumpton challenges the sufficiency of the evidence to defeat his necessity defense.

### A. Standard of Review

After a defendant has introduced some evidence supporting a defense, the State continues to bear the burden to prove its case beyond a reasonable doubt—but the State does not have a burden to introduce evidence to disprove the defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Thus, when a defendant challenges the legal sufficiency of the evidence to support rejection of a defense such as necessity, the question is not "whether the State presented evidence which refuted appellant's [defensive] evidence." *Dearborn v. State*, 420 S.W.3d 366, 372 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Saxton*, 804 S.W.2d 914); *Zuliani*, 97 S.W.3d at 594. Rather, the reviewing court must ask whether, after viewing all the evidence in the light most favorable to the prosecution, any rational

13

trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have found against the defendant on the necessity defense beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* TEX. CODE CRIM. PROC. art. 38.04; *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). When performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

## B.    Applicable Law

A person commits the offense of evading arrest with a motor vehicle if he intentionally flees from a person he knows to be a police officer attempting lawfully to arrest or detain him and he uses a vehicle while in flight. *See* TEX. PENAL CODE § 38.04.

As noted above, necessity is a justification defense that excuses a defendant's otherwise unlawful conduct if: (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does

14

not otherwise plainly appear. TEX. PENAL CODE § 9.22. To be entitled to this defense, a defendant must admit that he committed the offense charged and then offer the alleged necessity as a justification for his conduct. *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999); *see also Juarez v. State*, 308 S.W.3d 398, 401–02 (Tex. Crim. App. 2010).

The Penal Code defines "reasonable belief" as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE § 1.07(a)(42). "Harm" means "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." *Id.* § 1.07(a)(25). "Imminent" means something that is impending, something that is at the point of happening and not about to happen. *See Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd); *see also Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016) (holding that necessity defense applies when action is needed "'immediately' (i.e., now) to avoid 'imminent' harm (i.e., harm that is near at hand)"). And more than a generalized fear of harm is required in order to raise the issue of imminent harm. *Stefanoff v. State*, 78 S.W.3d 496, 501 (Tex. App.—Austin 2002, pet. ref'd); *Brazelton v. State*, 947 S.W.2d 644, 648 (Tex. App.—Fort Worth 1997, no pet.).

## C.    Analysis

Here, when we view all of the evidence in the light most favorable to the verdict and deferring to the factfinder's determination concerning the credibility of the witnesses, we conclude that the jury could have rationally found the elements of evading arrest beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914.

In that regard, Crumpton testified in his own defense and admitted that he intentionally fled from Sergeant Selle, an HPD officer, in a motor vehicle. Crumpton testified that he knew Sergeant Selle and other officers were attempting to arrest or detain him on a lawful warrant. Crumpton does not contest that his actions amount to evading arrest in a motor vehicle in violation of section 38.04 of the Penal Code. *See* TEX. PENAL CODE § 38.04. Indeed, if he had denied these elements, the defense of necessity would not have been available to him. *See Juarez*, 308 S.W.3d at 404 (noting that justification defenses such as necessity fall within confession-and-avoidance doctrine, which requires defendant to admit charged conduct before defense will be available).

Rather, Crumpton's sole defense is that his conduct was necessary because he was in fear of his life because he believed the police officers were going to shoot and kill him. But viewing all the evidence in the light most favorable to the verdict and deferring to the jury's credibility determinations, we conclude that the jury could

16

have rationally found against Crumpton on his necessity defense beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914.

Crumpton based his necessity defense on his own testimony that when he left the residence, he saw the officers with their firearms pointed at him. He testified that he was "terrified" they were going to shoot him because, based on his experience in being arrested before and "stuff on TV," he was afraid the police officers might panic and make a mistake. But the record contains no evidence that ever happened to him before. Nevertheless, Crumpton told the jury that he had a "gut feeling" something was not right. He explained that he had been arrested several times in the past and "usually they come to you," but this time "was totally different" because the officers were "staying back [and] . . . not coming for [him.]"

Although Crumpton testified to this fear and gut feeling, he also admitted that he knew officers "were there to probably detain me, not shoot me." He further admitted that although police officers had their firearms drawn, they did not shoot at him when he came out the first time, when he came out the second time, when he walked to his car, when he got in the car, or when he drove away.

Thus, by his own admission, Crumpton believed that the officers were not there to shoot him, and, in fact, they never fired at him. Crumpton's generalized, unsupported fear of being shot by police officers is insufficient by itself to support a conclusion that his actions in evading arrest in a motor vehicle were necessary to

17

avoid imminent harm. *See Williams v. State*, No. 06-18-00130-CR, 2019 WL 1284628, at \*2 (Tex. App.—Texarkana Mar. 21, 2019, pet. ref'd) (mem. op., not designated for publication) (holding that appellant's "generalized fear of police, without more, does not support the defense of necessity"); *Stefanoff*, 78 S.W.3d at 501.

The jury also heard testimony from multiple officers who were on scene, including Sergeant Selle and Sergeant Zhang, that they made several attempts to speak with Crumpton and get him to exit the house peacefully and with the least amount of force. Sergeant Selle testified that he had his gun drawn because they had received information from Crumpton's mother that Crumpton "was armed and that he wanted to shoot police." Sergeant Zhang likewise testified that the officers were faced with heightened risk because Crumpton was on a parole warrant, was present in the apartment by himself, and was potentially armed. Accordingly, Sergeant Zhang explained that most of the officers had their weapons drawn and at a "low ready" for their safety and protection, but that none of them had their weapons pointed at Crumpton.

Multiple body cam videos introduced by Crumpton also confirmed that the officers made numerous attempts to speak with Crumpton before he exited the residence. And, after Crumpton exited the residence, officers continued to inform

18

him that they did not want to hurt him and requested that he step outside with his hands up so they could talk.

But rather than complying, Crumpton refused to raise his hands, told the officers he had nothing to talk about and that he was leaving. Crumpton then entered his car and drove around the police vehicles and left the parking lot at a high rate of speed. Based on this evidence, even if the jury believed that Crumpton subjectively feared being shot by police, they could have rationally believed that his subjective fear was not reasonable under the circumstances.

Additionally, Sergeant Zhang testified that Crumpton made the situation more dangerous by not answering their phone calls, not responding to police communications over the loudspeaker, and not complying with police commands to stop and raise his hands. He further testified, without objection, that an ordinary and prudent person would comply when told by a police officer to stop and raise their hands. Thus, even if the jury believed Crumpton's testimony that he was in fear for his life because he believed the police officers were going to shoot him—the jury could have also rationally found that this belief was not reasonable because Crumpton could have simply complied with the officers' commands. *See, e.g.*, *Kirkpatrick v. State*, No. 01-20-00141-CR, 2022 WL 3093026, at *6 (Tex. App.— Houston [1st Dist.] Aug. 4, 2022, pet. ref'd, untimely filed) (mem. op., not designated for publication) (concluding that trial court could have rationally found

that appellant's belief that shooting complainant was immediately necessary to avoid imminent harm was not reasonable because "he had other options he could have pursued to ensure his safety").[5]

Finally, the jury could have doubted Crumpton's credibility with respect to his assertion of the necessity defense based on (1) his history of evading arrest by foot and motor vehicle,[6] (2) his testimony that he knew he had an open warrant and could have turned himself in at any time, (3) his admission that he is not "somebody that wants to go to jail," that he "hate[s] jail," and that it "sucks in jail," and (4) that he did not turn himself in after evading because he did not want to go to jail. *See* TEX. CODE CRIM. PROC. art. 38.04 (trier of fact is sole judge of weight and credibility of evidence).

Accordingly, for all the reasons above, we conclude that a rational jury could have found beyond a reasonable doubt against Crumpton on the necessity defense issue and, thus, the evidence is sufficient to defeat this defense and support his conviction. *See Saxton*, 804 S.W.2d at 914.

---

[5]   *See also Arnwine v. State*, 20 S.W.3d 155, 160 (Tex. App.—Texarkana 2000, no pet.) ("It has been held that the existence of lawful alternatives to the commission of a criminal act may preclude a defendant from the defense of justification by necessity.").

[6]   Crumpton testified that he had four or five misdemeanor convictions for evading arrest on foot, as well as a prior felony conviction for evading arrest in a motor vehicle.

We overrule Crumpton's second issue.

## Conclusion

We affirm the trial court's judgment in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.

Do not publish. TEX. R. APP. P. 47.2(b).